# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:22-cr-68-MMH-LLL

SHAWNTAE JAMELL CLARK

## O R D E R

**THIS CAUSE** is before the Court on two motions to suppress evidence filed by Defendant Shawntae Clark.  Clark filed his Motion to Suppress Physical Evidence and Statements (Doc. 28; First Motion) on September 6, 2022, and his Motion to Suppress Identification Evidence (Doc. 33; Second Motion) on September 26, 2022 (collectively, Motions).  Charged under a three-count Indictment (Doc. 1), Clark argues in his First Motion that all evidence flowing from his initial contact with law enforcement on July 2–3, 2021, should be suppressed.  See First Motion at 9.  In his Second Motion, Clark seeks to suppress "the out of court identification of the Defendant Mr. Clark by Officer Stivers, the use of any photographs not previously produced to the defense as discovery, and to prohibit" any in-court identification of Clark by any witness who viewed a photograph of Clark during the investigation.  Second Motion at 1.  The undersigned referred the Motions to the Honorable Laura Lothman Lambert, United States Magistrate Judge, for preparation of a report and

recommendation, and the Magistrate Judge held an evidentiary hearing on December 13, 2022. See generally Clerk's Minutes (Doc. 51), filed December 13, 2022; Transcript of Hearing on Motions to Suppress (Doc. 52; Transcript), filed January 12, 2023. On February 3, 2023, the Magistrate Judge filed a Report and Recommendation (Doc. 55; Report) recommending that the Motions be denied. Clark timely filed objections on March 20, 2023.[1] See Defendant's Objections to Magistrate's Report and Recommendation (Doc. 61; Clark's Objections).[2] And that same day, the United States filed the United States' Response to Report and Recommendation on Defendant's Motions to Suppress Evidence, Statements, and Identification (Doc. 60). Accordingly, this matter is ripe for review.

Because the Court finds that the objections are due to be overruled and that the Report is due to be adopted as the Court's opinion, the Court will not repeat the factual and procedural history or the arguments and authority

---

[1] Clark requested and received an extension of time to file his objections. See Endorsed Order (Doc. 57), entered February 9, 2023 (extending the deadline to March 20, 2023).

[2] In the title and introduction to Clark's Objections, counsel refers to Judge Lambert as the "Magistrate." Counsel should note that in 1990, the United States Congress intentionally, and after much consideration, changed the title of each United States magistrate to "United States magistrate judge." See Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321 (1990) ("After the enactment of this Act, each United States magistrate appointed under § 636 of Title 28 United States Code, shall be known as a United States magistrate judge . . . ."); see also Ruth Dapper, A Judge by Any Other Name? Mistitling of United States Magistrate Judges, 9 Fed. Cts. L. Rev. 1, 5 (Fall 2015). As such, in future filings in this or any other court, counsel should refer to a magistrate judge properly as "Judge _____" or the "Magistrate Judge." See Koutrakos v. Astrue, 906 F. Supp. 2d 30, 31 n.1 (D. Conn. 2012) (pointing out the proper way to refer to a United States magistrate judge).

addressed in the Report. Instead, the Court writes briefly only to address Clark's specific objections.

## I. Standard of Review

The Court reviews a magistrate judge's report and recommendation in accordance with the requirements of Rule 59, Federal Rules of Criminal Procedure (Rule(s)) and 28 U.S.C. § 636(b)(1). The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3). "[I]n determining whether to accept, reject, or modify the [magistrate judge's] report and recommendations, the district court has the duty to conduct a careful and complete review." Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (quoting Nettles v. Wainwright, 677 F.2d 404, 408 (5th Cir. Unit B 1982)[3]). Additionally, pursuant to Rule 59 and § 636(b)(1), where a party timely objects to the magistrate judge's report and recommendation, "[a] judge of the [district]

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit (including Unit A panel discussions of that circuit) handed down prior to October 1, 1981. W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 985 n.6 (11th Cir. 2009). After October 1, 1981, "only decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit . . . ." Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 n.1 (11th Cir. 2006). The Court notes that the Fifth Circuit overruled Nettles, in part, on other grounds, in Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1), as recognized in Alabama-Coushatta Tribe of Tex. v. United States, 757 F.3d 484 (5th Cir. 2014). However, "that does not change the binding effect of Nettles in this Circuit because Douglass was decided after October 1, 1981 and was not a Unit B decision." United States v. Schultz, 565 F.3d 1353, 1360 n.4 (11th Cir. 2009).

court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3); Thomas v. Arn, 474 U.S. 140, 149–50 (1985). Nevertheless, while de novo review of a magistrate judge's recommendation is required only where an objection is made, the Court always retains the authority to review such a recommendation in the exercise of its discretion. See Rule 59 advisory committee notes (2005) (citing Thomas, 474 U.S. at 154; Mathews v. Weber, 423 U.S. 261, 270–71 (1976)).

In deciding whether to reject or accept the magistrate judge's recommendations, a district judge retains the power "to hear additional testimony or the same testimony all over again if [she decides] that [it] would be beneficial in determining the motion." United States v. Marshall, 609 F.2d 152, 154 (5th Cir. 1980) (alteration added); United States v. Raddatz, 447 U.S. 667, 680 (1980) ("[A district judge's] broad discretion includes hearing the witnesses live to resolve conflicting credibility claims."); see also Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1251 (11th Cir. 2007) ("[T]he district court may, if it so chooses, conduct its own hearing as a prelude to making a new determination."). However, if a district court elects to reject a magistrate judge's credibility determinations on critical fact issues, the court must first rehear the disputed testimony. Louis v. Blackburn, 630 F.2d 1105,

1110 (5th Cir. 1980)[4]; United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam); see also Amlong & Amlong, P.A., 500 F.3d at 1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings.").   Indeed, only in the "rare case" where "'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . . [is] articulated by the district judge'" may the district court reject the credibility findings without rehearing the witness testimony.  Cofield, 272 F.3d at 1306 (quoting Marshall, 609 F.2d at 155); Amlong & Amlong, P.A., 500 F.3d at 1250. In contrast, "a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings."   Cofield, 272 F.3d at 1305 (emphasis added) (citing Raddatz, 447 U.S. at 675–76).

## II.   Analysis of Objections

Clark raises several objections to the Magistrate Judge's recommended factual findings and legal conclusions.  See Clark's Objections at 1, 17.   For

---

[4] In Ballard v. Comm'r of Internal Revenue, 429 F.3d 1026 (11th Cir. 2005) (per curiam), the Eleventh Circuit states that "[a] district court must defer to a magistrate's findings unless the magistrate's understanding of facts is entirely unreasonable." Ballard, 429 F.3d at 1031.   To the extent Ballard conflicts with Blackburn and Marshall, the Court notes that "where two prior panel decisions conflict" the Court is "bound to follow the oldest one."   Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000).   Regardless, the Court need not resolve this conflict because the undersigned will accept the Magistrate Judge's credibility determinations.   As set forth below, the Court can discern no basis in the record to doubt the Magistrate Judge's findings, much less to suggest that the findings are "entirely unreasonable."

the reasons discussed below, the Court finds that each of Clark's objections is due to be overruled.

### A. First Motion

In his First Motion, Clark raises challenges relating to a July 2, 2021 traffic stop. See First Motion at 1. Specifically, Clark objects to the Magistrate Judge's finding that there was probable cause for the stop based on an inoperable tag light, as well as her finding that officers had reasonable suspicion that Clark had been engaged in criminal activity. Clark's Objections at 1. He also objects to the Magistrate Judge's finding that officers did not unlawfully prolong the traffic stop. Id. at 16.

#### i. Probable Cause for Traffic Stop

In support of his objection to the Magistrate Judge's finding that there was probable cause for the traffic stop, Clark challenges the Magistrate Judge's credibility determinations. See id. at 9–13. According to Clark, the Magistrate Judge "erred in finding that [Detective Stivers' and Sydorowicz's] testimony was sufficiently corroborated and/or . . . sufficiently credible so as to support a finding of probable cause." Id. at 13. He recites the evidence presented during the hearing, identifies what he views as inconsistencies, and notes the absence of corroborating evidence for certain statements made by the officers. Id. at 9–13. Each of Clark's arguments on this point disputes the comparative weight the Magistrate Judge assigned to the testimony of the

various witnesses. The Court has carefully reviewed the evidence and arguments presented to the Magistrate Judge. Having done so, the Court is satisfied that the Magistrate Judge's credibility determinations are fully supported by the record. Moreover, the Court finds nothing in Clark's Objections that undermines its confidence in Judge Lambert's credibility determinations. Accordingly, the Court will adopt the Magistrate Judge's recommended findings on the question of whether there was probable cause for the traffic stop.

### ii. Reasonable Suspicion

The Magistrate Judge also found the officers reasonably suspected that Clark was or had been engaged in criminal activity. See Report at 13. Pointing out that Detective Stivers "did not observe any criminal activity" when watching the hotel room, Clark contends that Detective Stivers "possessed no specific information" to reasonably suspect that the individual leaving the hotel room, Clark, had committed a crime. See Clark's Objections at 14. In doing so, Clark acknowledges that David Rucker told Officer Sydorowicz that he had purchased drugs from a "black male with short dreads" on the previous day. See id. (quoting Transcript at 79).[5] But he ignores the fact that Rucker also

---

[5] Clark describes this as Detective Stivers' interview of Rucker, see Clark's Objections at 14, but this appears to be an error. Despite some initial confusion in his testimony, Detective Stivers clarified that he did not interview Rucker until after the events of July 2. See Transcript at 26–27. Instead, Officer Sydorowicz conducted the interview in question. See id. at 79 (direct examination of Sydorowicz); Clark's Objections at 14 (citing this portion

provided the room number from which he purchased the drugs, Room 105, the very room from which Detective Stivers watched Clark exit.  See Transcript at 79; id. at 15–16 (explaining that Detective Stivers "observe[d] the defendant exit" Room 105).  This information certainly warranted a suspicion that the man leaving Room 105 who matched the description given by Rucker was engaged in criminal activity.

Clark also objects to the Magistrate Judge's consideration of the nervousness of Phillip Jones, the driver of the vehicle, during the traffic stop.  See Clark's Objections at 14–15.  Notably, while nervousness alone may not support a finding of reasonable suspicion, nervousness can contribute to a finding that reasonable suspicion existed under the totality of the circumstances.  See United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (noting that the defendant's "shaking" and acting "extremely nervous" supported a finding of reasonable suspicion).  Here, nervousness was just one of the facts identified as supporting the officer's reasonable suspicion.  See Report at 13–14.  Regardless, even without consideration of the driver's nervous behavior, the Magistrate Judge properly concluded that the officers possessed articulable, reasonable suspicion that Clark was or had been engaging in criminal activity.  Rucker had provided the officers with a

---

of the transcript).

description matching Clark, and advised that he regularly purchased drugs from that individual in Room 105 of a hotel located in what the officers knew to be an area known for drug use. See Transcript at 48–49 (describing Detective Vasquez's knowledge of the area). The officers identified Clark as being an associate of the person renting the room. Id. at 157–59. They then observed Clark arrive at the motel in a Dodge Dart, and watched him go into Room 105. Id. at 20–22. Officers saw him come in and out of the room before exiting with a backpack to walk across an adjacent parking lot, cross the street, and re-enter the same Dodge Dart in a convenience store parking lot. Id. at 20–22, 53–60. Considering the totality of the circumstances known to the officers, the Magistrate Judge's determination that they had articulable, reasonable suspicion is fully supported by the record.

### iii. Duration of the Stop

Clark also objects to the Magistrate Judge's finding that the officers did not "unconstitutionally prolong" the traffic stop. See Report at 15–16. He asserts that Officer Sydorowicz "unlawfully prolonged the traffic stop by engaging in multiple checking of the driver's license and warrants." Clark's Objections at 16. However, the record does not support this assertion. Officer Sydorowicz testified that he first ran the tag of Jones's car, which only provided him with "basic information," including that the car's owner had "[n]o misdemeanor warrants." See Transcript at 102–03. Then, after obtaining

Jones's license, registration, and insurance information, Officer Sydorowicz "call[ed] that information out over the radio" to "verif[y] whether his license is valid" and whether Jones had any "misdemeanor or felony" warrants. Id. at 87–88. Clark provides no basis for his assertion that this added more time "than what was necessary for conducting the routine records check" to issue the citation. See Clark's Objections at 17. To the contrary, Officer Sydorowicz testified on cross-examination that running the tag was insufficient. See Transcript at 104 ("Q: But you'd already spoken with dispatch about this vehicle, right? A: Not -- not about everything. That's just calling out the traffic stop, sir."). He also testified that his request for Jones's license and registration was "[j]ust like any other stop that I've done thousands of times." Id. at 85–86. Clark's assertion that Officer Sydorowicz unnecessarily prolonged the stop by choosing to run Jones's license in addition to the tag is thus without merit. Indeed, the stop had only been in progress for "approximately seven minutes" before the K-9 alerted to the presence of possible narcotics.[6] See Report at 16. Under the totality of the circumstances, the

---

[6] This does not represent the amount of time it took for Officer Sydorowicz to run Jones's information. Clark does not dispute that Officer Sydorowicz waited "three or four minutes" for backup to arrive before approaching the vehicle. See Clark's Objections at 16; Report at 7–8 ("Per his usual practice, DS Sydorowicz waited for back-up officers before approaching the Dart; back-up arrived approximately three minutes after the initial stop."). Officer Sydorowicz estimated that he then had to wait "at least a few minutes" for Jones to pull up his insurance information on his phone, see Transcript at 86, and approximately "3 to 4 minutes" for dispatch to run the information. See id. at 88. Clark does not argue that Officer Sydorowicz illegally prolonged the stop by waiting for backup before approaching the vehicle. See Clark's Objections at 16–17.

Court agrees with the Magistrate Judge's conclusion that the stop was not unconstitutionally prolonged.  See id.

### B. Second Motion

With regard to the Second Motion, Clark makes no specific objection. Nor does he explain why the Magistrate Judge's findings or conclusions are incorrect. Instead he states that he "stands on the argument made in his motion" and the suppression hearing. See Clark's Objections at 17.  But by doing so, he does not identify any specific finding or conclusion that he believes to be erroneous as required by Rule 59.  See United States v. Spradley, 828 F. App'x 679, 680–81 (11th Cir. 2020) (holding that a defendant "waived his right to review" under Rule 59 because "[h]is filing cited none of the magistrate judge's findings of fact, nor any of her legal conclusions," and instead "asserted a generalized objection to the R&R and asked the district court to review the magistrate judge's findings")[7]; see also Rule 59(b)(2) (permitting "specific written objections to the proposed findings and recommendations," and adding that "[f]ailure to object in accordance with this rule waives a party's right to review" (emphasis added)).  Here, Clark's attempted objection is particularly insufficient given that his counsel conceded at the suppression hearing that he

---

[7] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

had not identified any authority applying the principles he cited in the Second Motion to internal investigative work by law enforcement, and the Court is not aware of any.[8]  See Transcript at 219.  Thus, his reliance on the authority and arguments he previously presented is of little value, and fails to properly invoke the Court's obligation to review the Magistrate Judge's resolution of the Second Motion.  Nevertheless, the Court finds no error in the Magistrate Judge's conclusion that the Second Motion is due to be denied.

### III.  Conclusion

Upon review of the record, the Court will overrule Clark's Objections, and will accept and adopt the Report as the opinion of the Court.

Accordingly, it is

**ORDERED:**

1. Defendant's Objections to Magistrate's Report and Recommendation (Doc. 81) are **OVERRULED**.

2. The Report and Recommendation (Doc. 55) is **ADOPTED** as the opinion of the Court.

---

[8] At the time Clark filed his Second Motion, he had not received the photo in discovery. See Second Motion at 2.  But during the evidentiary hearing—in which the photo was an exhibit, see Government Exhibit 5 at 2 (Doc. 51-32)—Clark did not appear to dispute that the photo depicts him.  Even if Clark submitted authority applying his cited cases to internal investigations, then, it would still be unclear why there would be "a very substantial likelihood of irreparable misidentification."  See Second Motion at 3 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).

3. Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 28) is **DENIED**.

4. Defendant's Motion to Suppress Identification Evidence (Doc. 33) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of May, 2023.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

lc31

Copies to:

The Honorable Laura Lothman Lambert
United States Magistrate Judge

Counsel of Record